**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**


John M. Alice,                                    )
                                                  )
                        Plaintiff,                )
                                                  )
            v.                                    )        No. 05 C 50132
                                                  )
GCS, Incorporated, an Illinois corporation,       )
and Gregory C. Skonie,                            )
                                                  )
                        Defendants.               )
                                                  )


<u>**MEMORANDUM ORDER AND OPINION**</u>


MARVIN E. ASPEN, District Judge:

        Plaintiff John Alice filed a complaint against defendants GCS, Incorporated, and Gregory

Skonie on July 7, 2005, alleging, *inter alia*, a violation of the Fair Labor Standards Act's

overtime provision, 29 U.S.C. § 207(a).  Presently before us are plaintiff's and defendants'

cross-motions for summary judgment on that claim.  For the reasons described below, we deny

defendants' motion and grant plaintiff's motion in part.

**BACKGROUND**

        Plaintiff John Alice worked as a truck driver for GCS, Incorporated ("GCS") from March

27, 2003 to March 3, 2004 as a salaried employee and April 2, 2004 to May 27, 2005 as an

hourly employee.[1]  (Pl. Statement of Uncontested Material Facts ("Pl. Facts") ¶ 4.)  Defendant

_____

        [1] Defendants failed to submit a statement of uncontested material facts in support of their
motion for summary judgment and failed to respond to plaintiff's statement of uncontested
material facts in accordance with Local Rule 56.1.  L.R. 56.1(a)(3), (b)(3).  As such, properly

1

Gregory Skonie, GCS's president, hired Alice on both occasions and "set his compensation and hours of employment." (*Id.*) During his tenure at GCS, Alice delivered drop boxes at construction sites in Illinois, collected the boxes once they were full of debris, transported the waste to Heartland Recycling, L.L.C. ("Heartland"), and then returned the empty boxes to GCS. (*Id.* ¶ 5.) Heartland, a recycling center in Forest View, Illinois, sorted the debris and then commingled the waste with like-kind materials. (*Id.* ¶¶ 5, 8.) Heartland delivered all of the recyclable materials it salvaged to various companies within Illinois. (*Id.* ¶ 9.) The non-recyclable refuse got dumped in either the Forest Lawn Landfill in Three Oaks, Michigan or the Livingston Landfill in Pontiac, Illinois. (*Id.* ¶ 11.) GCS had no input or control over where the non-recyclable waste was transported. (*Id.* ¶ 12.)

During the course of his employment, Alice regularly worked more than forty hours per week, but was not compensated at a rate of time and a half for the overtime hours. (*Id.* ¶¶ 14-16, 19.) Between March 27, 2003 and March 3, 2004, Alice "worked 447 hours in excess of forty hours per week for which he was not compensated as a salaried employee." (*Id.* ¶ 15.) As a result, Alice seeks $14,751.00 in overtime pay for that time period (447 hours at a rate of $33.00 per hour).[2] When Alice returned to GCS in April 2004, he entered into an agreement with the company whereby GCS would "bank" one overtime hour per day to be credited and compensated when Alice worked less than forty hours per week. (*Id.* ¶ 17.) However, "[d]uring

---

supported material facts set forth in plaintiff's statement of uncontested facts will be deemed admitted. L.R. 56.1(b)(3)©; *Jones v. Centurion Invest. Assocs.*, 268 F. Supp. 2d 1004, 1006 (N.D. Ill. 2003) (quoting *Smith v. Lamz,* 321 F. F3d 680, 683 (7th Cir. 2003)) ("[A] failure to respond by the nonmovant as mandated by the local rules results in an admission.").

[2] Alice computes $33.00 based on the hourly rate he received when he returned as an hourly employee, $22.00.

the period of April 2, 2004 to May 27, 2005, Alice never worked less than forty hours per week,

and consequently, never received any compensation for his banked hours [which totaled 269

hours] during that period of time." (*Id.* ¶¶ 19, 20.)  After plaintiff filed the instant action, GCS

tendered payment for the 269 banked hours at Alice's regular hourly rate of $22.00 per hour.

(*Id.* ¶ 20.)  In addition to the banked hours, Alice logged 1,093.25 overtime hours between April

2, 2004 and May 27, 2005, for which he was paid his regular hourly rate of $22.00 per hour.  (*Id.*

¶ 21.)  Alice seeks the balance of overtime compensation, which includes $2,959.00 for his

banked hours (269 hours at $11.00 per hour) and $12,025.75 in overtime pay for the period of

April 2, 2004 to May 27, 2005 (1,093.25 hours at $11.00).  (*Id.* ¶¶ 20, 22.)

    Alice filed a motion for summary judgment arguing that GCS and Skonie (in his

individual capacity) are liable for violating the FLSA and owe him the balance of overtime

compensation, liquidated damages, and attorney's fees and costs.  GCS filed a cross-motion for

summary judgment wherein they argue that Alice is exempt from the FLSA's overtime provision

and thus plaintiff is not entitled to overtime compensation at a rate of time and a half**.**

## STANDARD OF REVIEW

    Summary judgment is proper only when "there is no genuine issue as to any material fact

and the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56©.  A

genuine issue for trial exists when "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct.

2505, 2510 (1986).  This standard places the initial burden on the moving party to identify "those

portions of the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue

of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986)

(quotation marks omitted).  Once the moving party meets this burden of production, the

nonmoving party "may not rest upon the mere allegations or denials of the adverse party's

pleading" but rather "must set forth specific facts showing that there is a genuine issue [of

material fact] for trial."  Fed. R. Civ. P. 56(e).  In deciding whether summary judgment is

appropriate, we must accept the nonmoving party's evidence as true, and draw all inferences in

that party's favor.  *See Anderson*, 477 U.S. at 255.

## DISCUSSION

It is undisputed that while an employee at GCS, Alice consistently worked more than

forty hours per week, yet GCS did not compensate him for the overtime hours at a higher rate

than his base salary.   (Pl. Facts ¶¶ 14-21.)  The Fair Labor Standards Act ("FLSA") provides

that employees who work more than forty hours per week must "receive[] compensation ... [for

the overtime hours] at a rate not less than one and one-half times the regular rate at which he is

employed."[3]  29 U.S.C. § 207(a)(1).

A.      *Liability under the FLSA*

Employers are exempted from the overtime provision of the FLSA "with respect to [] any

employee ... [over whom] the Secretary of Transportation has power to establish qualifications

and maximum hours of service pursuant to the [Motor Carrier Safety Act.]"  29 U.S.C.

§ 213(b)(1).  The exemption is construed narrowly against employers, and defendants have the

burden to establish that the exemption applies to its employees.  *Turk v. Buffets, Inc*., 940 F.

---

[3] Defendants admitted that they are an "enterprise subject to the [Fair Labor Safety] Act."  (Pl. Facts ¶ 3.)

4

Supp. 1255, 1259 (N.D. Ill. 1996).  The Motor Carrier Safety Act ("MCSA"), 49 U.S.C. §

31502, authorizes the Secretary of Transportation to "prescribe requirements for [] qualifications

and maximum hours of service of employees of, and safety of operation and equipment of, a

motor carrier [] and ... a motor private carrier, when needed to promote safety of operation."  49

U.S.C. § 31502(b)(1),(2).  Defendants argue that they qualify as a motor private carrier under the

MCSA, and thus, they need not comply with Section 207(a)(1) of the FLSA.  (Def. Mot. for

Summ. J. at 2.)  A motor private carrier is defined as "a person ... transporting property by

commercial motor vehicle ... when – (A) the transportation is [in interstate commerce]; (B) the

person is the owner, lessee, or bailee of the property being transported; and © the property is

being transported for sale, lease, ... or bailment or to further a commercial enterprise."  49 U.S.C.

§ 13102(15).

    GCS claims that it qualifies as a private motor carrier by virtue of the non-recyclable,

non-hazardous waste that it transports across Illinois highways, which ultimately is dumped in

Michigan.  Plaintiff counters that the waste does not qualify as "property" under the MCSA.  The

definition of a private motor carrier, the section granting the Department of Transportation

jurisdiction over regulation of motor carriers, and part II of the Interstate Commerce Act ("ICA")

each include references to "property."[4]  49 U.S.C. §§ 13102, 13501.  While garbage is not listed

among the exempt commodities regulated by the MCSA, 49 U.S.C. § 13506, the Interstate

Commerce Commission ("ICC") has previously held that non-nuclear, non-recyclable waste

does not constitute "property" under the ICA.  *Wilson v. IESI N.Y. Corp.*, No. 04C1271, 2006

WL 2136307, at *5-9 (M.D. Pa. July 28, 2006).  The Department of Transportation ("DOT")

---

[4] The MCSA is part of the ICA.

currently oversees regulation of motor carriers, 49 U.S.C. § 13501, so "it is not clear what, if any, deference the opinions of the ICC ... should have on the question whether garbage is property under the current version[] of ... § 13501 ... Nevertheless, it appears that the DOT continues to view garbage not to be property subject to § 13501." *Id.* at *9.  Therefore, the non-hazardous, non-recyclable waste that Alice transports to Heartland likely does not qualify as property under the MCSA.

Assuming *arguendo* the waste constitutes "property," defendants cannot establish that such property was being transported in interstate commerce.  The regulations emphasize that the FLSA exemption only applies where the activities of the motor private carrier "relate directly to the transportation of materials moving in interstate or foreign commerce within the meaning of the Motor Carrier Act."  29 C.F.R. § 782.7(a); *see also* 49 U.S.C. §§ 13102(15), 13501. Defendants claim that Alice transported goods in interstate commerce because the non-reusable waste products that he delivered to Heartland were subsequently dumped in Three Oaks, Michigan (and Illinois).  (Def. Mot. for Summ. J. at 1-2.)  Intrastate transportation of goods qualifies as interstate commerce "if what is being transported is actually moving in interstate commerce within the meaning of [the FLSA and the MCSA]; the fact that other carriers transport it out of or into the State is not material."  29 C.F.R. § 782.7(b)(1).  However, the intrastate transportation must "form part of a 'practical continuity of movement' across State lines from the point of origin to the point of destination."  *Id.; see also Goldberg v. Faber Indus.*, *Inc.,* 291 F.2d 232, 234 (7th Cir. 1961) (finding that interstate commerce exists "where the motor vehicle is operated wholly upon the highways of a single state, but the transportation performed is part of a through movement originating in or destined to a point in another state."); *McGee v.*

*Corporate Express Delivery Systs.,* No. 01 C 1245, 2003 WL 22757757, at *3-7 (N.D. Ill. Nov. 20, 2003) (finding cancelled checks in practical continuity of movement where they cross state lines to return to makers' bank); *Jones,* 268 F. Supp. 2d at 1010.  Plaintiff contends that his activities for GCS fall outside the scope of interstate commerce because Heartland processed the refuse before sending it out of state, thus interrupting the continuity of the movement of goods in interstate commerce.

In *Goldberg,* the Seventh Circuit found that Illinois drivers transporting meat scraps to Illinois "rendering plants where they [were] processed into grease and livestock and poultry foods" were not engaged in interstate commerce because the processing broke "the continuity of the transportation, thus precluding a holding that there [was] a through interstate movement of the meat scraps."  291 F.2d at 234.  Arguing that the waste he delivered was not part of a practical continuity of movement of goods in interstate commerce, Alice likens Heartland's processing of the construction debris to the processing that occurred in *Goldberg*: "the waste was ... separated, sorted, and salvaged into a reusable commodity, just as the meat scraps were recycled into grease and livestock food ... the commingling of the debris with like-kind waste ... prior to transportation across state lines results in a loss of identity of the property transported by Alice."  (Pl. Mot. for Summ. J. at 6.)  While the nature of the processing in *Goldberg* differs from the processing that occurred at Heartland, we agree with plaintiff that separating, sorting, and commingling the non-reusable waste prior to shipping it across state lines sufficiently interrupted the continuity of movement of the original product.

Our decision is buttressed by the nature of Alice's job at GCS.  Alice collected construction debris around Illinois and then dumped the waste at Heartland - at which point GCS

7

no longer had an interest in or control over the refuse. "[C]rucial to a determination of the essential character of a shipment is the shipper's fixed and persisting intent at the time of shipment." *Jones*, 268 F. Supp. 2d at 1012 (internal quotation omitted); *see also* 29 C.F.R. § 782.7(b)(2).  GCS's fixed and persistent intent was to unload its debris at Heartland.[5]  In contrast, the defendant in *Jones* had a fixed and persistent intent to move its bread trays in interstate commerce where the trays were filled with freshly baked goods in Indiana, transported to a warehouse in Illinois, loaded onto trucks for sale within Illinois, and then the empty trays were returned to the Illinois warehouse before being sent back to the Indiana plant for re-stocking. *Jones*, 269 F. Supp. 2d at 1006-07.  Unlike the defendant in *Jones*, GCS did not maintain an interest in the waste after it deposited the load at Heartland and Heartland alone determined where to transport the recyclable and non-recyclable waste *after* it was sorted and processed with other refuse.  (*See* Pl. Mot. for Summ. J. at 5-8.)

According to the Department of Labor, who enforces the FLSA:

> there is no fixed and persisting intent [to ship goods in interstate commerce] where (I) at the time of shipment there is no specific order being filled for a specific quantity of a given product to be moved through to a specific destination beyond the terminal storage, and (ii) the terminal storage is a distribution point or local marketing facility from which specific amounts of the product are sold or allocated, and (iii) transportation in the furtherance of this distribution within the single State is specifically arranged only after sale or allocation from storage.

29 C.F.R. § 782.7(b)(2).  GCS did not have a fixed and persistent intent to transport the construction debris in interstate commerce, but rather intended to transport the waste to the

---

[5]  Defendants claim that "[b]oth CGS and Skonie knew that the bulk of the non-recyclables was going to [Twin Oaks], Michigan."  (Def. Mem. in Support of Def. Mot. for Summ. J. at 3.)  However, standing alone, such knowledge (in hindsight or otherwise) does not translate into a fixed and persistent intent to ship the goods in interstate commerce. *See Burlington Northern, Inc. v. Weyerhaeuser Co.,* 719 F.2d 304, 309 (9th Cir. 1983).

Illinois recycling center.  Heartland determined the final destination of the waste GCS delivered only after it sorted, processed, and commingled the refuse with like-kind products and accumulated sufficient quantities of matter to constitute a full load.  "The decision to ship [the processed waste] to a landfill in Illinois versus Michigan ... was not based upon any 'fixed and persisting' destination for the construction debris at the time of shipment by GCS, but by other logistical factors weighed [and determined by] Heartland."  (Pl. Mot. at 8.)

In *Burlington Northern,* 719 F.2d at 308-10, the Ninth Circuit held that a logging company, which shipped logs from its inland sort yards to another sort yard for eventual "reshipment to an as yet unknown destination[,]" did not have a fixed and persistent intent to participate in interstate commerce at the time the logs left the inland sort yards.  In that case, the logs were processed and sorted and then exported in foreign commerce or delivered to another facility intrastate.  *Id*. at 310.  Similarly, the waste Alice transported to Heartland was processed and sorted and then divided into local and interstate shipments.  In both instances, someone other than the defendant decided where to send the products *after* delivery and processing.  *See id*.  "The fact that most of the [waste at Heartland was] eventually shipped to [an] interstate ... destination[] is not sufficient to give rise to a fixed intent to engage in an interstate movement at the time the [debris] left the [construction sites] with [its] final destination still unknown."  *Id*. at 309 (quoting *Southern Pacific Transp. Co. v. ICC,* 565 F.2d 615, 618 (9th Cir. 1977)).  Just like the logs that were delivered intrastate to the sort yard, the waste that Alice delivered to Heartland "had not yet embarked on a journey in interstate or foreign commerce."  *Id*.  Based on the totality of the circumstances, we find that the construction debris that Alice transported was not in a practical continuity of movement in interstate commerce and GCS did not have a fixed and

persistent intent to ship the non-recyclable portion of the waste products it delivered to Heartland out of the state of Illinois. Defendants failed to meet their burden to establish (or raise a genuine material fact as to) their qualification as a private motor carrier exempted from the FLSA's overtime requirements. Therefore, plaintiff is entitled to summary judgment regarding defendants' liability for violating the FLSA.[6]

B.    *Individual Liability*

Alice argues that Skonie, GCS' president, is personally liable for violating the FLSA because he had operational control over GCS and personal knowledge of plaintiff's failure to receive overtime pay. "The FLSA contemplates there being several simultaneous employers who may be responsible for compliance with the FLSA." *Dole v. Elliot Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991) (citing *Falk v. Brennan*, 414 U.S. 190, 195, 94 S.Ct. 427, 431 (1973)). An individual may be liable in an FLSA action "provided the defendant had supervisory authority over the complaining employee and was responsible in whole or in part for the alleged violation." *See Riordan v. Kempiners,* 831 F.2d 690, 694 (7th Cir. 1987) (cited in *Wilson v. Advocate Health & Hosp. Corp.*, No. 05 C 6408, 2006 WL 1749662, at *2 (7th Cir. 2006)). A corporate officer with "operational control" over an employing entity clearly falls within the definition of an individual with supervisory authority. Moreover, even if a defendant does not exercise exclusive control over all the day-to-day affairs of the employer, so long as he or she possesses control over the aspect of employment alleged to have been violated, the FLSA will apply to that individual. *Freemon v. Foley,* 911 F. Supp. 326, 331 (N.D. Ill. 1995) (cited in

---

[6] Since we find that GCS was not moving goods in interstate commerce, we need not consider Alice's argument that defendants do not qualify as a private motor carrier because they are not the owner, lessee, or bailee of the construction debris.

*Wilson*, 2006 WL 1749662, at *2).

Arguing that Skonie is not subject to individual liability, defendants proclaim: "[t]he fact of the matter is the fact that Skonie hired Plaintiff for the employer, GCS[,] and Skonie himself was an employee of GCS."  (Def. Mem. in Support of Def. Mot. for Summ. J. at 5.)  However, employees can be considered "employers" under the FLSA and defendant does not dispute that Skonie, the president of GCS,  "set [plaintiff's] compensation and hours of employment[, plaintiff] reported directly to [him,]" and he supervised plaintiff's work.  (Pl. Facts ¶¶ 4, 14.)  *See Freemon*, 911 F. Supp. at 331.  Since the violation at issue is failure to pay overtime and Skonie had control over plaintiff's compensation and hours, he qualifies as an employer under the FLSA and is thus subject to individual liability.  *See Wilson,* 2006 WL 1749662, at *2; *see Freemon*, 911 F. Supp. at 331.

C.      *Statute of Limitations*

Plaintiff argues that he is entitled to overtime compensation for the three years preceding July 7, 2005 (the date on which he filed the instant action).  (Pl. Mot. for Summ. J. at 12.)  "[A] cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued[.]"  Portal-to-Portal Pay Act, 29 U.S.C. § 255(a).  However, "[a] two-year period is the norm, a three-year period the exception, and the burden is on the employee to show that the violation was willful."  *Walton v. United Cons. Club Inc.*, 786 F.2d 303, 310 (7th Cir. 1986); *Bankston v. State of Illinois*, 60 F.3d 1249, 1253 (7th Cir. 1995) ("[T]he plaintiffs bore the burden of showing that the defendants' conduct was wilful for purposes of the statute of limitations.").  To sustain his burden to extend the statute of limitations to three years, Alice must show that defendants exhibited "some highly culpable mental state [-] either actual

11

knowledge that [their] acts violate[d] the law or reckless indifference to the law." *Id.* at 3308-309; *see Renteria v. Italia Foods, Inc.,* No. 02 C 495, 2003 WL 21995190, at *3 (N.D. Ill. Aug. 21, 2003) ("Wilful behavior is conduct that is more than simply negligent or unreasonable.").

In support of his claim that defendants' conduct rose to the level of wilfulness, plaintiff merely points to his "repeated admonitions to Skonie of his right to overtime pay throughout his tenure at GCS[ and] GCS['s resulting] fail[ure] to pay overtime." (Pl. Mot. for Summ. J. at 13.) Viewing all facts in defendants favor, we cannot say that Alice's "admonitions" to Skonie sufficiently evince a wilful violation of the FLSA because defendants may have believed that Alice was exempted from the FLSA's overtime regulations based on the MCSA. The sincerity of defendants' beliefs and whether they were reasonable or in reckless disregard of established law is a question better left for the trier of fact. Therefore, we cannot say as a matter of law that Alice is entitled to recover overtime compensation for work before July 7, 2003. *See Renteria*, 2003 WL 21995190, at *4.

D.    *Liquidated Damages & Attorney's Fees*

Section 216(b) of the FLSA provides that employers who violate the overtime regulations are liable "in the amount of [the employee's] unpaid overtime compensation ... and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). However, when an "employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may ... award no liquidated damages[.]" Portal-to-Portal Pay Act, 29 U.S.C. § 260. While doubling a plaintiff's recovery is discretionary, there is "a strong presumption in favor of doubling. ... Double damages are the norm, single damages the

12

exception, burden on the employer." *Walton*, 786 F.2d at 310.  In fact, the Seventh Circuit

characterizes the employer's burden as "substantial" and has explained that "[i]t is easier to

receive liquidated damages under the FLSA than it is to extend the statute of limitations for

FLSA claims[.]"  *Bankston,* 60 F.3d at 1254; *see Paulitz v. City of Naperville,* 874 F. Supp. 833,

835 (N.D. Ill. 1994) ("[A] showing that the violations were not wilful falls short of the

employer's burden under section 260.").

     In response to Alice's request for liquidated damages, defendants argue that "Skonie's

belief that Alice was exempt from overtime compensation was reasonable, particularly in view

because [sic] the Section 213(b)(1) is esoteric and highly complex, involving the overlap and

interplay of two statutes and bodies of precedent."  (Def. Mem. in Support of Def. Mot. for

Summ. J. at 4.)  However, defendants failed to submit any evidence, via affidavit or otherwise,

that Skonie reasonably believed Alice was exempt from the FLSA's overtime requirement based

on the MCSA.  "For an employer to establish it had objectively reasonable grounds for believing

its actions did not violate the FLSA, it must establish that it took affirmative steps to determine

FLSA requirements, but nevertheless, violated the FLSA."  *Dominici*, 881 F. Supp. at 322;

*Paulitz,* 874 F. Supp. at 835 (internal quotation omitted) ("Failure to take affirmative action to

ascertain the Act's requirements precludes a finding of reasonable good faith, even where the

defendant's practices conform to industry customs and where there is no evidence of a wilful

violation of the Act.").  Absent evidence of defendants' actions or beliefs, the reasonableness

thereof or whether defendants acted in good faith, defendants cannot avoid liquidated damages.[7]

---

[7] *See Bankston*, 60 F.3d at 1255 (upholding the district court's award of liquidated damages where "[t]he defendants did not present evidence to establish that they held a good-faith, reasonable, though inaccurate, belief that the plaintiffs were not covered by the FLSA");

## CONCLUSION

Defendants' motion for summary judgment is denied.[8]

Plaintiff's motion for summary judgment is granted in part and denied in part. We find

that defendants are liable for violating the FLSA, but a factual question remains as to the

wilfulness of defendants' violation of the Act, which would determine whether Alice is entitled

to overtime compensation beyond July 7, 2003. In sum, Alice should have been compensated

$14,984.75 in gross pay (1362.25 hours at $11.00 per hour) for overtime hours worked between

April 2, 2004 and July 7, 2005. Plaintiff is also entitled to overtime compensation for work

between July 7, 2003 and March 3, 2004, although we cannot accurately determine the amount

of gross pay based on the records before us.

---

*see also Renteria*, 2003 WL 21995190, at *4 (holding that "an employer's ignorance of the Act or its requirements does not constitute reasonable grounds for believing it was in compliance."); *Dominici*, 881 F. Supp. at 318 (granting plaintiffs liquidated damages because of a "complete absence of evidence that the [defendant] took any affirmative steps to determine its liability under the FLSA"); *Doden v. Plainfield Fire Prot. Dist.,* No. 94 C 6294, 1995 WL 699719, at *3 (N.D. Ill. Nov. 24, 1995) ("[A] showing that the employer received advice on the specific compliance issue in question, rather than merely seeking advice about the statute in general, is usually required.").

[8] Defendants' motion for summary judgment is replete with conclusory, unsupported allegations. For example, defendants assert that there "is no question that GCS is a private motor carrier engaged in interstate commerce by virtue of its interstate transportation of refuse to Heartland." (Def. Brief in Support of Mot. for Summ. J. at 6.) The only piece of evidence relied upon by defendants, the affidavit of Heartland's vice president and manager of operations, does not support granting summary judgment in defendants' favor, especially since we considered the affidavit and drew all facts and inferences in defendants' favor when determined that defendants do not qualify as a private motor carrier moving property in interstate commerce. Section A, *supra*. While we could deny defendants' motion for summary judgment based on their failure to follow the local rules, i.e. submission of a statement of uncontested facts supported by evidentiary material, we deny the motion on its merits for the reasons discussed in the preceding sections.

Accordingly, we order the following:

(1)  Alice shall submit a legible,[9] detailed log of his overtime hours for July 7, 2003 to March 3, 2004 on or before September 29, 2006, with a proposed order for defendants to make all overtime payments and to pay an equal amount in liquidated damages.  Defendants may respond to this submission if they so choose on or before October 13, 2006.

(2)  Plaintiff shall submit an accounting of such fees with supporting documentation on or before September 29, 2006.[10]  Defendants may file any objections on or before October 13, 2006.

(3) The parties shall propose a joint pretrial order as to the remaining issue of defendants' willfulness to be submitted in open court at the 10:30 am status call on December 21, 2006.[11]

It is so ordered.

Date: September 14, 2006

Marvin E. Aspen, District Judge

---

[9] Exhibit B-2 of Plaintiff's Statement of Material Facts lists overtime hours during 2003, but we cannot accurately determine the overtime hours based on the handwritten notes.  For example, Plaintiff lists 28 3/4 overtime hours for October 2, 2003, 26 hours for October 9, and 33 and 1/2 hours for October 16.  (Pl. Facts Ex. B-2.)

[10] Plaintiff is also entitled to his reasonable attorney's fees and costs.  *See Bankston*, 60 F.3d at 1255 ("The FLSA directs the courts to award reasonable attorneys' fees and costs to victorious plaintiffs."); *Dominici*, 881 F. Supp. at 322 ("The granting of attorney fees and costs ... is mandatory instead of discretionary, for prevailing plaintiffs under 29 U.S.C. 216(b).").

[11] The parties may obtain copies of the pretrial order form from the Court's chambers.

15